Argued at Pendleton May 2, affirmed May 31, rehearing denied June 21, 1921.

## MENO v. OTTO.

(198 Pac. 250.)

**Animals—Under City Charter, Sale of Impounded Animals to be on Notice "as" in Case of Execution.**

1. Under the charter of City of Enterprise, providing that, after an animal running at large has been impounded and forfeited, the city may sell it "as provided by law for execution sales of personal property," notice of sale must be posted in three public places, not less than 10 days successively, as required by Section 237, Or. L., before sale of personal property on execution; "as" applying not only to method of sale but manner of notice; so sale on notice by publication is void.

From Wallowa: JOHN W. KNOWLES, Judge.

In Banc.

The complaint is in the usual form of claim and delivery, and charges that the plaintiff is the owner and entitled to the possession of a certain brown mare which the defendant wrongfully and unlawfully holds and retains in Wallowa County, Oregon, and prays for judgment for its possession or for its value, if delivery cannot be had, and damages.

The answer is a general denial. The evidence is conclusive that the plaintiff was the owner of the mare and that in the fall of 1919 he placed her in a

pasture about four miles from Enterprise. The defendant introduced in evidence, the city charter of Enterprise of 1899 and the amendment in 1903; certain ordinances relating to the taking up and impounding and selling of animals found running at large in the city limits; the notice of the city marshal of impounding the mare in question and other animals together with his affidavit as to the posting of notices of that fact and the notice of sale which was published in the newspaper; the affidavit of the printer; the marshal's return or certificate of sale and the sale of the mare to the defendant.

The city marshal testified that in November or December of 1919, with other animals he found the mare in question running at large on the streets of Enterprise and took them up; that he afterwards learned that the plaintiff was the owner of the mare and wrote him a letter to the effect that she was in the city pound and would be sold if he did not come and pay the charges on or before December 18th; that on December 19th, pursuant to such notices he sold the mare at the city pound at a public auction to the defendant for $69; that there were a dozen or more people at the sale and quite a few bidders on the mare. It was stipulated that she was of the reasonable value of $150. After the evidence was taken, both parties moved for a directed verdict, which motions were overruled. The court gave the following instructions to the jury:

"Under the view that the court takes of the law in this case, there will be but one question to be submitted to you, and that is as to the value of the use of the mare in question, during the time that she has been detained from the plaintiff by the defendant."

The jury found that the plaintiff was the owner of the mare and that she was of the value of $150, and

for the further sum of $50 damages for the wrongful detention, upon which judgment was entered, from which the defendant appeals, assigning as error the overruling of his motion for a directed verdict for the defendant and the giving of the above instruction.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. D. W. Sheahan.*

For respondent there was a brief and an oral argument by *Mr. J. A. Burleigh.*

JOHNS, J.—1. Section 16 of its charter authorized the City of Enterprise "to provide by ordinance for having domestic and other animals found running at large within the city limits restrained, impounded and forfeited, and may sell the same when forfeited, as provided by law for execution sales of personal property." Under this provision, the city passed Ordinance No. 51, Section 1 of which is as follows:

"It shall be unlawful for the owner or owners of any horse, mare, gelding, foal, mule, jenny, sheep, goat, cow, steer, bull, heifer, hog or shoat, to allow the same to be or run at large at any time within the corporate limits of the City of Enterprise in the State of Oregon.

"Section 2: It shall be the duty of the city marshal of the said City of Enterprise, when any or all of such animals are found wandering about, or running at large within the corporate limits of said City of Enterprise, to forthwith take up and confine the same, and as soon thereafter as can be done, give actual notice thereof to the owner or owners thereof, if known, and in case the owners cannot be found or determined, then by posting in three conspicuous places within the corporate limits of said city, a notice containing a description of said animals by both natural and artificial marks, and stating the time when such

animals were taken up, which notice shall remain posted for a period of five (5) days inclusive.

"Section 3: At any time within said period of five days (5), the owner or owners of such animals shall be permitted to take the same from such confinement upon payment to said city marshal of all costs and expenses incurred in feeding, caring and giving said notice."

Section 4 provides that after the expiration of the five-day period, the city marshal shall advertise the animals for sale by the publication of a notice for the period of twenty days in a newspaper published in the City of Enterprise. This section was amended by Ordinance No. 136, to read as follows:

"At the expiration of the period of five (5) days in case any and all of such animals are not claimed, or taken from their place of confinement by the owners thereof, the city marshal shall at such time, cause such confined animals to be advertised in a newspaper, published in said City of Enterprise, two times, once each week, in said newspaper and shall in said notice so advertising said animals describe the same by both natural and artificial marks, and stating the time when said animals were taken up and confined, and that the same will be sold on a day certain at public auction if not claimed and stating the time and place of sale."

Section 5 of the amended act provides that after the publication of such notice, if the owners fail or neglect to claim the animal and pay the charges the "marshal shall proceed to sell said animal so taken up at public auction to the highest and best bidder for cash and shall make and file with the city recorder a certificate of such sale."

The city marshal testified that he put the mare in the city pound and tried to find the owner; that she was shod all around, her foretop was cut off and that she had no visible brand; that he posted her and that

she then looked more like a bay than a light brown mare; that through inquiry he learned the animal belonged to the plaintiff who was then near Elk Mountain, and that he promptly addressed a letter to him at Chico, which was the postoffice for that section, in which he advised him that his mare was in the pound and that if not taken out it would be sold on December 18th. The plaintiff denies that he received the letter although it was never returned. The proof is conclusive that after the impounding of the animal, the city marshal posted the notices of forfeiture in compliance with Section 2 of Ordinance No. 51, above quoted. No one having claimed her after the five-day notice of impounding had expired, he advertised her for sale under the provisions of Section 4 of the amended Ordinance No. 136, and caused a notice of such sale to be published once a week for three weeks in the "Wallowa County Reporter." After describing the mare and other animals and reciting that they were found running at large within the corporate limits of the city and that the city marshal has advertised them by posting three notices as follows, "one at the courthouse, one at the Enterprise Livery Barn, and one at the R. S. & Z. Corner within the City of Enterprise," the published notice recites that—

The marshal "will offer said animals for sale at public auction to the highest bidder for cash in hand. Said auction sale will be held on Thursday, December 18, 1919. Said animals were taken up November 20, 1919. Sale will be held at the city pound at 2 P. M.

Signed, "A. J. McINTURFF,

"City Marshal of the City of Enterprise, Oregon."

The proof of posting of the impounding notices and of the published notice of sale is regular and complies with the ordinance. Pursuant to the published notice and at the specified time and place, the marshal offered the animal for sale. The evidence is conclu-

sive that at least a dozen persons were present; that a number of bids were made on the mare; that the defendant was the highest bidder, and that the marshal sold the mare to him for $69, which the defendant paid and there took her into his possession. At the trial, it was contended by the plaintiff that the ordinance providing for the publication of the notice of sale in a newspaper and the sale made pursuant to such published notice was null and void and in conflict with Section 16 of the charter which authorizes the city "to provide by ordinance for having domestic and other animals found running at large within the city limits restrained, impounded and forfeited, and may sell the same when forfeited as provided by law for execution sales of personal property." The record is conclusive that the mare was forfeited to the city within the meaning of Section 16 of the city charter and that pursuant to the notices published in the newspaper, she was sold at public auction to the plaintiff and that he was the highest bidder. Section 237, Or. L., provides that:

"Before the sale of property on execution, notice thereof shall be given as follows:

"1. In case of personal property, by posting written or printed notice of the time and place of sale in three public places of the county where the sale is to take place, not less than ten days successively."

It is not claimed that any written or printed notices of sale were ever posted. The defendant contends, first, that Section 16 of the city charter which says that when the animal is forfeited, the city has the power to sell it "as provided by law for execution sales of personal property," applies only to the manner and method of sale and that it does not carry with it or include the posting of the notices of sale. In other words, under the provisions of the charter, to sell an impounded animal which has been forfeited to

the city, the publication in a newspaper of the notice of sale as provided for in Ordinance No. 136, is sufficient and it is not necessary that the notices should be posted as provided in Section 237, Or. L. It will be noted that the statute says, "before the sale of property on execution notice thereof shall be given as follows," and that in the case of personal property, written or printed notices shall be posted in three public places not less than ten days successively, and the charter says that the city may sell the property "as provided by law for execution sales of personal property." Corpus Juris, Volume 5, page 597, defines the word "as" to mean, "like; similar to; of the same kind; in the same manner; in like manner; likeness; like as; even; to the same extent with; when; while; at some time. * * " On principle, the case of *Brownfield* v. *Weicht,* 9 Ind. 394, seems to be in point. That was a suit to foreclose a real mortgage and it appeared that the sheriff's notice of sale which the plaintiff saw followed the decree and that there was no statement in the notice that the rents and profits would be first offered for sale and the court held:

"The general law regulating the sale of real estate on execution, explicitly requires the rents and profits for seven years to be first offered: 2 R. S., p. 140, § 463. And the language of the statute directing sales in cases of foreclosure, is as follows: 'A copy of the order of sale, and judgment shall be issued, etc., to the sheriff, who shall thereupon proceed to sell the mortgaged premises, or so much thereof as may be necessary to satisfy the judgment, interest, and cost, as upon execution': Id., p. 176, § 635. It seems to us that the phrase, 'as upon execution,' plainly shows a legislative intention that the law regulating sales on execution should apply to, and in all respects govern, sales under a decree of foreclosure."

The statute did not require that the advertisement should specify that the rents and profits should be

first offered, but the court held that under the law, it was the official duty of the sheriff to first offer the rents and profits for sale and that it was unnecessary for him to advertise in effect that he would perform his official duty. That is to say, in a notice of sale of real property on a foreclosure decree under Section 635, page 176, of the Indiana statute and without any specific mention of that fact in the notice, the words "as upon execution," in that section shall be construed to mean that the rents and profits for seven years shall be first offered for sale as provided for on page 140, Section 463 of the statute, which pertains to the sale of property on a plain execution. Appellant relies upon *Davis* v. *Magnes,* 58 Or. 69 (113 Pac. 1), where it is said:

"An execution sale without proper notice is in any event a mere irregularity, and such sale cannot be attacked collaterally: Freeman, Executions, § 286, and cases there cited."

That case grew out of the sale of real property and with all the parties before the court the sale was confirmed without objection. The opinion further says:

"If the order had been taken without the appearance of the execution defendant in court, a different question might have arisen."

Under the statute, many irregularities in the sale of real property are cured when the sale is confirmed, but there is no confirmation of the sale of personal property. It is true that Section 286 of Freeman on Executions, cited in *Davis* v. *Magnes,* says:

"That the statutes requiring notice of the sale to be given are directory merely, and that the failure to give such notice cannot avoid the sale against any purchaser not himself in fault. This rule has been applied in cases where the purchaser was aware of

the deficiency of the notice, and seems to be applicable in all cases in which the absence of the notice was not occasioned by some fraud or collusion of which the purchaser had knowledge, or in which he participated.''

Apparently the same rule is stated in Corpus Juris, Volume 23, Section 599. We have examined the large number of authorities cited under each of those sections. Many of them are founded upon other and different statutes and neither of them is like the instant case upon either fact or principle. Whatever may be the rule under other statutes, it has been the uniform practice in this state since Section 237, Or. L., was enacted, that notice of sale of personal property on execution should be given by posting written or printed notices of the time and place of sale in three public places in the county not less than ten days successively. To now hold that such a sale of personal property could be made by publication in a newspaper would overthrow a continuous practice of fifty years and in legal effect nullify the plain provisions of the statute. It is true that the notice of sale was published in a newspaper and as provided in the ordinance, but any authority of the city to sell the mare must be found in Section 16 of the charter which says that after an animal is impounded, the city ''may sell the same when forfeited as provided by law for execution sales of personal property.'' This means that the notice of sale should have been given in the manner specified in Section 237, Or. L. The answer of the defendant was a general denial, under which the only issues of fact were the ownership of the mare, its value which was stipulated at the trial, and the damages, if any, for its unlawful detention. Judgment is affirmed.     AFFIRMED.    REHEARING DENIED.

BEAN, J., dissenting.